McKEAGUE, Circuit Judge,
concurring in part and writing the majority as to Part VI.
I agree with Judge Moore’s opinion as to parts I-V. I write separately with regard to Planned Parenthood’s undue burden claim because, as Judge Dlott’s well-reasoned opinion stated: “Even viewing the evidence in the light most favorable to [Planned Parenthood], it is clear that the record does not create a triable issue of material fact as to whether the Act has the effect of creating a substantial *514 obstacle to the abortion right. There is no evidence that the Act would impose an undue burden on ‘a woman’s ability to make th[e] decision to have an abortion.’ ” (Order Granting in Part Mot. Sum. J. at 28, Page ID # 2655 (quoting Planned Parenthood Se. Penn. v. Casey, 505 U.S. 833, 874, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (second alteration in original))).
As Judge Moore’s opinion correctly notes, we must view the inferences to be drawn from the underlying facts in the light most favorable to Planned Parenthood. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The two parts of the Act that Planned Parenthood claims create an undue burden discussed here are: (1) the ban on medical abortions between 50 and 63 days LMP, and (2) the increased dosage requirements., Review of the evidence shows that the district court correctly concluded that the record simply does not give rise to a reasonable inference that the Act imposes a substantial obstacle for Ohio women deciding whether to abort a pregnancy. Therefore, these claims cannot survive summary judgment.[1]
A. Method Ban on Medical Abortions 50-63 days LMP
It is true that governing case law analyzing method bans in the context of “partial-birth” techniques does not provide controlling guidance for this case. At most, the Supreme Court in Gonzales v. Carhart, 550 U.S. 124, 150-54, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007), instructed that state action is likely to constitute an undue burden where the most common abortion technique available to a particular subset of women is prohibited. Likewise, our case law indicates a statute that “restrict[s] the most commonly used procedure” is likely to be problematic. Women’s Med. Prof. Corp. v. Taft, 353 F.3d 436, 453 (6th Cir.2003). So if this case involved a method ban on surgical abortion, which is the most common procedure at 50-63 days LMP, but left open the option of medical abortion, Gonzales would dictate the result.
But here, viewing the evidence in the light most favorable to Planned Parenthood, we examine a method preferred by approximately 31% of women to whom it is available. Because jurisprudence from the Supreme Court and this Circuit does not clearly address a method ban comparable to the instant one, we áre left to apply the more general undue-burden standard. Thus, for Planned Parenthood to survive summary judgment, there must be a genuine dispute of material fact as to whether “ ‘in a large fraction of the cases in which [the Act] is relevant, it will operate as a substantial obstacle to a woman’s choice to undergo an abortion.’ ” Women’s Med. Prof. Corp. v. Voinovich, 130 F.3d 187, 196 (6th Cir.1997) (quoting Casey, 505 U.S. at 895, 112 S.Ct. 2791).
Importantly, the Supreme Court has not articulated any rule that would suggest that the right to choose abortion encompasses the right to choose a particular *515 abortion method. In one dissenting opinion, Justice Stevens suggested that a woman’s constitutionally protected liberty interest in the right to choose an abortion has “two components — her decision to terminate the pregnancy and her decision concerning the method of doing so.” Benten v. Kessler, 505 U.S. 1084, 1085, 112 S.Ct. 2929, 120 L.Ed.2d 926 (1992) (per curiam) (Stevens, J., dissenting) (holding— less than one month after Casey — that a woman who had mifepristone pills confiscated before the FDA approved the drug could not compel the agency to return her dose because she had not demonstrated a substantial likelihood of success on the merits but declining to reach the undue-burden issue, stating “we express no view on the merits of this assertion”). But the Court has not expressly endorsed an approach that would protect the right to choose a particular method of abortion. See Casey, 505 U.S. at 874, 112 S.Ct. 2791 (“ ‘the [abortion] right protects the woman from unduly burdensome interference with her freedom to decide whether to terminate her pregnancy.’ ” (quoting Maher v. Roe, 432 U.S. 464, 473-74, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977))).
Planned Parenthood submitted a list of disputed issues of material fact in opposition to summary judgment. Assuming the evidence therein is admissible, the organization alleges that “first trimester surgical abortion is an invasive procedure that many women seek to avoid” and that abortion is an emotional procedure and there are many factors that affect the particular procedure a woman may elect. (Plaintiffs Resp. to Ohio’s Prop. Undisputed Facts, Page ID #2072.) The organization also submits that “[o]nce women are counseled about both medication and surgical abortion, most women demonstrate a strong and clear preference for the type of procedure [that they] choose and are satisfied with that method.” (Id. at Page ID # 2073.) Some of the specific reasons that Planned Parenthood says “[w]omen choose medication” are a higher degree of personal control, the feeling that a medical abortion is more natural, and the ability to execute a medical abortion in the privacy of the woman’s home. (Id.) Finally, Planned Parenthood states “for victims of rape, or for women who have experienced sexual abuse or molestation, medication abortion is often less traumatic ... [and] many women simply fear invasive surgery....” (Id.)
Planned Parenthood also offered the affidavits of nine women, some of whom had their scheduled medication abortion can-celled because of the Act. For example, one woman stated she was upset and sad because she felt a medical abortion was more natural, but she had scheduled a surgical abortion anyway. (Dawn Doe Aff., Page ID # 2574-75.) Another woman said that her daughter “wanted her abortion experience to be the least invasive possible, and wanted to have the abortion in the privacy of our home.” (Leslie Doe Aff., Page ID # 2558.) When the medical abortion was cancelled, her daughter went forward with the surgical procedure on the scheduled day. (Id. at Page ID #2559.) She added that her daughter was “nervous and scared [about the surgical procedure], and at the same time relieved that she was going to terminate the pregnancy.” (Id.) Another woman said that' she was “shocked by the news and scared” about the surgical procedure, but decided to go ahead with it on the scheduled day. (Maria Doe Aff., Page ID #2653.) Another woman said she felt “very frustrated and exasperated with the situation” but “decided to go ahead with the surgical procedure that day.” (Doreen Doe Aff., Page ID # 2555.)
All of these statements give rise to the inference that some women prefer a medi *516 cal abortion over a surgical abortion, but they do not support the conclusion that the unavailability of a medical abortion would create a substantial obstacle for a large fraction of women in deciding whether to have an abortion. Indeed, as Judge Dlott pointed out, the evidence shows that all of the affected women who gave statements proceeded to obtain a surgical abortion regardless of their preference for a medical procedure. Based on this record, we cannot assume that Planned 'Parenthood will produce different evidence at trial that could support this material- fact. Such an assumption would overstep the reasonable inferences we are meant to draw in the organization’s favor. See Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.
I agree with the common-sense inference that because “the differences between the procedures from the perspective of the woman are substantial,” some — maybe even most — women will prefer medical abortion over surgical abortion. See ante at ¶ 56. However, our consideration cannot end there. The abortion right as it has been described by the Supreme Court protects the “freedom to decide whether to terminate” a pregnancy. Casey, 505 U.S. at 874, 112 S.Ct. 2791. The Court has not extended constitutional protection to a woman’s preferred method, or her “decision concerning the method” of terminating a pregnancy. Benten, 505 U.S. at 1085, 112 S.Ct. 2929 (Stevens, J., dissenting). Therefore, without any evidence that the Act is a substantial obstacle to the ultimate abortion decision, our own common-sense conclusions about what women may prefer do not create a genuine dispute of material fact.
Accordingly, the district court properly granted summary judgment with regard to the method ban for women 50-63 days LMP.
B. Increased Dosage
The district court also properly found that Planned Parenthood failed to allege sufficient evidence to survive summary judgment on its claim that the added cost associated with increased dosage under the Act creates an undue burden.
Planned Parenthood alleges a “significant” increase in the cost of a medical abortion due to the increased dosage of mifepristone required by the Act. (Plaintiffs Resp. to Ohio’s Prop. Undisputed Facts, Page ID # 2072.) More concretely, the organization submitted affidavits from clinic directors indicating an increase of $150. (See, e.g., Harrington Aff. ¶ 8, Page ID # 2180; Brenner Aff. ¶ 9, Page ID #2114.) Viewing the evidence submitted in the light most favorable to the organization, that would constitute an increase of more than 40% over what medical abortion currently costs. (See Harrington, Page ID # 2180.) Notably, before the Act, surgical abortion was offered at the same price as medical abortion in all of the clinics that submitted affidavits. (See id. (both procedures currently cost $360); Brenner, Page ID # 2114 (both procedures currently cost $545); Clawson Aff. ¶ 12, Page ID # 2151 (both procedures currently cost $410); Lonn Aff. ¶ 9, Page ID # 2186 (both procedures currently cost $450)). So, unless the cost of surgical abortion is independently raised, the alleged increased cost of medical abortion would make surgical abortion a less-expensive option. Planned Parenthood also submitted the affidavit of a woman who stated: “If a medication abortion were offered at a price that was $100-$200 higher than a surgical abortion, it would be really difficult for me. I am not certain I would be able to still choose medication, though I would try to raise more money, because it would be worth a lot to me.” (Emily Poe Aff., Page ID # 2565.)
*517 Although the Supreme Court has indicated that “at some point, increased cost could become a substantial obstacle,” Casey, 505 U.S. at 901, 112 S.Ct. 2791, that “point” remains undefined. In Casey, the evidence showed only that a disputed recordkeeping requirement “might increase the cost of some abortions by a slight amount.” Id. The Court declined to find an undue burden. The Casey Court also considered an in-person informed-consent requirement and a twenty-four hour notification requirement. Casey, 505 U.S. at 884, 112 S.Ct. 2791. These requirements caused women to make more trips to the clinic. The Court stated the facts on the record as follows:
The findings of fact ... indicate that because of the distances many women must travel to reach an abortion provider, the practical effect will often be a delay of much more than a day because the waiting period requires that a woman seeking an abortion make at least two visits to the doctor. [I]n many instances this will increase the exposure of women seeking abortions to “the harassment and hostility of anti-abortion protestors demonstrating outside a clinic.” As a result, ... for those women who have the fewest financial resources, those who must travel long distances, and those who have difficulty explaining their whereabouts to husbands, employers, or others, the 24-hour waiting period will be “particularly burdensome.”
Casey, 505 U.S. at 885-86, 112 S.Ct. 2791. Still, the Court found that even these onerous impediments did not constitute an undue burden based on the record.
In Women’s Med. Prof. Corp. v. Baird, 438 F.3d 595 (6th Cir.2006), this Court addressed the closure of a clinic, which required women to travel farther for an abortion — giving rise to increased cost. The increased travel distance caused by the disputed closing of a clinic in that case would require women to travel at least 55 miles to reach an abortion clinic. Id. at 605. After noting that the binding and persuasive authority did not “firmly establish when distance becomes an undue burden” this Court found no undue burden even though closing the clinic “may be burdensome” for some potential patients. Id. This Court reasoned that there was no undue burden because “there is no indication that the closing of the clinic would create a substantial obstacle for Dayton-area women seeking an abortion.... ” Id. at 606.
Similarly here, Planned Parenthood has not placed on the record any evidence suggesting that the added cost of a medical abortion would unduly burden the right to choose abortion for a large fraction of affected women. Moreover, the evidence submitted by Planned Parenthood shows that surgical abortion remains available at a lower price. In fact, the only woman who mentioned the increased cost in her statement specifically said that this would make it difficult for her to choose medical abortion, but not that it would be a burden on her choice to abort her pregnancy. This evidence does not give rise to a reasonable inference that the dosage increase is a substantial obstacle to the choice to undergo abortion.
Even more than in the method-ban analysis, we cannot infer a substantial obstacle from the evidence submitted regarding the increased dosage requirement. The record arguably supports an inference that the increased cost would burden women’s ability to choose medical abortion, which may be their preferred method. However, that does not permit a reasonable inference that an undue burden on the constitutionally protected “freedom to decide whether to terminate” a pregnancy would result. Casey, 505 U.S. at 874, 112 S.Ct. *518 2791. That is because, even assuming the increased cost presents a substantial obstacle to choosing a medical abortion, women would still have the lower-priced option of surgical abortion available to them. Without evidence that the cost increase would create a substantial obstacle to the ultimate choice to undergo an abortion, this claim cannot survive summary-judgment.
Thus, the district court properly granted summary judgment on this claim as well.

. Judge Moore refers to this conclusion as "resolving these fact questions,” and "conclusively establishing as a matter of law that the method ban in this case does not impose a substantial obstacle....” See ante at ¶¶ 57, 63. Not at all. Instead, on the record before us and under the summary judgment standard, Planned Parenthood did not sustain its burden of adducing enough evidence to create a genuine question of fact. For an issue of fact to be genuine, the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec.. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Planned Parenthood has not carried its burden in this case.